**In re the Application of Marie Claire E. MEREDITH, Petitioner,**

v.

**Steven MEREDITH, Respondent.**

**No. CIV 90–1632–PHX–RGS.**

United States District Court, D. Arizona.

Feb. 26, 1991.

Raul Castro, Phoenix, Ariz., for petitioner.

David Derickson, Phoenix, Ariz., for respondent.

## FINDINGS OF FACT CONCLUSIONS OF LAW AND DECISION

STRAND, District Judge.

### BACKGROUND

A petition pursuant to the Hague Convention was filed by Marie Claire Meredith, October 22, 1990, which seeks the return of a minor child, Christina, born to Petitioner and Respondent March 12, 1987. Petitioner alleges the child was wrongfully removed from Birmingham, England to Phoenix, Arizona where the Respondent resides. A hearing on the merits was held February 14, and 15, 1991, and the court now issues its findings of fact, conclusions of law, and decision.

### FINDINGS OF FACT

Petitioner Marie Claire Meredith was born in Algiers and is a French citizen. She emigrated to the United States in November of 1975 pursuant to a "fiancee Visa" or a K–1 Visa and has been a permanent resident alien for approximately 15 years due to a marriage to Mr. Walter Graves, and later, due to her marital relationship with respondent, Steven Meredith. Respondent is a United States Citizen and has resided in Arizona since 1969.

Marie Claire and Steven Meredith were married July 18, 1986, in Phoenix, Arizona and resided in Arizona as husband and wife from the date of their marriage until December of 1989. Marie Claire and Steven Meredith had a child, Christina Vanessa Meredith, who was born in Phoenix, Arizona, on March 12, 1987. She is a United States Citizen, and resided in Arizona until December of 1989. After May of 1990, the minor child resumed living in Phoenix, and has continued to live here since that date.

Petitioner met Steven Taylor, a British citizen, in Phoenix, Arizona, while she was married to and living with Respondent. Petitioner telephoned Mr. Taylor in Birmingham, England, from Phoenix, Arizona

several times, including a thirty-minute phone call on November 9, 1990. It was after this phone call that Petitioner suggested to Respondent that she go to France to visit her parents. Round-trip airline tickets for Petitioner and Christina were issued by Trans World Airlines in Phoenix, Arizona, on November 19, 1989. Petitioner left for France with Christina and a child from a previous marriage, Jerome Graves, on December 7, 1989.

On December 29, 1989, Petitioner told Respondent she would not be returning to Arizona. She instructed Respondent to go to the Arizona court, file for a divorce and grant her custody of Christina, informing him that if he followed her instructions, she would let him see the minor child again. On January 2, 1990, Petitioner and the minor child, left France and went to Birmingham, England.

Respondent filed a Complaint for Dissolution of Marriage on January 18, 1990, in the Superior Court of Arizona in Maricopa County. Respondent obtained an emergency ex-parte order granting him custody of his daughter from the Honorable Bernard J. Dougherty of the Arizona Superior Court and a hearing was scheduled for January 26, 1990.

The hearing scheduled for January 26, 1990, was quashed due to lack of service. A new hearing was scheduled for March 13, 1990. Respondent was led to believe and did believe that Petitioner was residing in France. Whenever he called for Petitioner, he was informed that Petitioner was "visiting somewhere in the country." Petitioner did not inform Respondent that she was no longer residing with her parents in France, and did not inform Respondent that she had moved to her companion Steven Taylor's home in Birmingham, England.

Petitioner admitted that if Respondent had learned of her new location in January or February of 1990, she would have moved again so that he could not locate her or their child. Petitioner enlisted the aid of her parents and other family members in her attempt to deceive Respondent into believing that Petitioner and their minor child were still residing in France.

Respondent hired a French attorney to accomplish service upon Petitioner pursuant to French law. On February 21, 1990, service was accomplished upon Petitioner through her father who stated that Petitioner resided with him in France at the house where the papers were served. Petitioner's father, Jacques Anton, was served and given copies of all of the documents listed on the Affidavit of the process server, in both English and French. Petitioner acknowledges she received these documents on February 24, 1990. She also acknowledges she was aware of the March 13, 1990, hearing and that she understood the hearing was to determine custody of the minor child. Petitioner further received notice of this hearing from telephone conversations between herself and Respondent who specifically informed her of the hearing date and that she should be present. Petitioner, however, did not respond to the Petition for Dissolution, nor did she appear at the March 13, 1990, hearing, or make any attempt to notify the court of any circumstances which would have prevented her appearance.

On March 13, 1990, the Arizona Court found service to be proper upon Petitioner, and further, after hearing the merits of the Petition, the court lawfully awarded custody of the minor child, Christina, to Respondent. On March 27, 1990, a Notice and Application for Entry of Default was properly filed and a default was entered against Petitioner. A hearing was held April 26, 1990, and a Decree of Dissolution which lawfully awarded custody of the minor child to Respondent was signed by the Arizona trial court Judge and filed. On May 24, 1990, Respondent regained physical custody of the minor child.

Respondent and the minor child have continuously resided in Phoenix, Arizona since their return from England in May of 1990. On Friday, June 1, 1990, Petitioner appeared in Phoenix, Arizona demanding to see the minor child. Petitioner was told she must first comply with the restrictions upon her visitation as set forth in the Arizona Decree of Dissolution. While in Arizona on June 1, 1990, Petitioner made no attempt to have the Decree of Dissolution

or its provisions regarding custody or visitation vacated or modified.

Respondent has never been served with notice of any British proceeding affecting his rights to custody of Christina nor has he ever been afforded an opportunity to appear and present his case to the British Court. The Wardship proceedings were conducted after Respondent had regained custody of the minor child on May 24, 1990.

Petitioner acknowledges the fact that she is currently divorced pursuant to the Arizona Superior Court Decree of Dissolution entered April 26, 1990. This is the same document which awards full, sole, and legal custody of the minor child, Christina to Respondent. At no time has Petitioner filed an action in the Arizona court to set aside or modify the Decree of Dissolution, or any of its provisions relating to custody or visitation. Petitioner has never appealed the Arizona court's decision regarding the dissolution of the marriage or any of the provisions of the decree.

## CONCLUSIONS OF LAW

The Hague Convention is an international treaty designed to protect custody rights of parents on a global scale. The United States became a signatory nation to the Convention in July of 1988. The stated objective of the Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, Art. 1, (a), (b) ("Convention"). Based upon Article 19 of the Convention and under the International Child Abduction Remedies Act § 2(b)(4)[1], the court is empowered to determine the merits of an alleged abduction, but not the merits of the underlying custody claims or issues. Therefore, the focus of the court is solely on whether Petitioner may invoke the protection of the Convention for what she alleges was the wrongful abduction of her daughter from Birmingham, England on May 24, 1990. The court concludes that she cannot.

In order to invoke Hague Convention relief, Petitioner must satisfy two threshold issues: 1) lawful rights of custody at the time of the removal or retention; and 2) that such removal or retention is from the child's "habitual residence." Based on the evidence presented, the court concludes that Petitioner has not established the existence of either of these factors.

### A. Lawful Rights of Custody

Article 3, as further clarified by Article 5(a), provides that the removal or retention of a child is to be considered wrongful where:

(a) it is in breach of rights of custody attributed to a person ... under the law of the state in which the child was a habitual resident immediately before the removal or retention; and

(b) at the time of the removal or retention, those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Custody rights are determined by the law of the child's habitual residence. "Habitual residence" is an undefined term in the Convention. It is apparent that it must be determined by the facts and circumstances presented in each particular case.

Petitioner argues Christina's habitual residence is Birmingham, England. Petitioner argues the decree by British Judge Scott Baker establishes the requirement of habitual residence. There are two defects with Petitioner's contentions. First, the determination of "habitual residence" was not made by the British Court until May 24, 1990, or after Mr. Meredith regained control of Christina, and second, there was no evidence regarding any attempts by Petitioner to establish such residence prior to this action. The court concludes Petitioner sought such a declaration simply to invoke the protection of the Hague Convention, for if Christina was not an "habitual resi-

1. Enacted by Congress to facilitate the implementation of the Convention. 42 U.S.C. § 11601 et seq.

dent" of Birmingham, England, she was not removed wrongfully from a place of "habitual residence." Moreover, the proceeding was conducted ex parte with no service or other notice to Respondent so that he might have appeared or otherwise advised the court as to his position. Such a proceeding does not comport with the requirements of due process as Mr. Meredith was not provided with any notice or opportunity to be heard. Further, Respondent testified that as of this date, he has never been served with copies of any documents or been made aware in any formal manner of the official findings of the British Court. Petitioner has not demonstrated habitual residence by any objective evidence. The only factor tending to support such an assertion is the ex parte British decree. Evidence before this court demonstrated that Petitioner left for England without informing Respondent, and secreted her whereabouts from Respondent. It would be inequitable and unjust to allow such conduct to create "habitual residence" for Christina, a minor child who is a United States citizen, an Arizona domiciliary and who shares "habitual residence" with her lawful, custodial parent, her father.

Christina was born March 12, 1987, in Arizona and remained in said State until December 7, 1989. The only reason she left Arizona was to accompany her mother on a holiday visit to France. Christina was absent from the State of Arizona for a period of five months being a temporary resident with Petitioner in France and England. To equate the temporary removal and subsequent sequestration of the minor child to legal status of "habitual residence" in another country would be to reward Petitioner for her ability to conceal the child from the Respondent, her lawful, custodial parent. The Petitioner may not benefit from such conduct. Accordingly, the court concludes that Christina's place of habitual residence was and is Phoenix, Arizona and not Birmingham, England.

With respect to the issue of the "breach of custody rights," Petitioner left the country with the acquiescence of Respondent. By December 29, 1989, however, she was interfering with his parental custodial rights by unilaterally removing and/or retaining the child abroad without his consent. She further interfered with his rights as a parent by moving to a new country, and concealing the child's whereabouts through deceit and the utilization of other family members including her parents.

Moreover, her rights of shared parental custody were terminated with the issuance of the Custody decree from the Arizona Superior Court. Custody of the child has been expressly awarded to Respondent in a lawful proceeding of which Petitioner was given notice and in which she was given an opportunity to participate. The temporary order of custody was made into a permanent order after the Arizona court determined that she had failed to respond to any of the pleadings which had been served on her.

Article 17 of the Hague Convention specifies that the Court may not base its decision to return or not to return the child solely on the existence of a custody order, but also provides that the facts and circumstances concerning the custody order and the reasons for its issuance may be examined by the court. Convention, Article 17. In the case at bar, it is clear that Respondent's Custody Order was based on lawfully supported findings that Arizona had proper jurisdiction over the parties and that Respondent was entitled to custody of Christina, the minor child of the parties. Petitioner was on notice of the pending dissolution of the marriage. She had instructed Mr. Meredith to go to the Arizona court and pursue both a divorce decree and a petition for child custody. These documents were personally served on Petitioner through her father with the papers both in English and in French. She admitted being aware of the existence of such documents by February 24, 1990. The Superior Court found such service to be lawfully sufficient. Testimony from the hearing demonstrated both that Mr. Meredith told Petitioner she needed to appear at the Superior Court proceedings, and that she had sought legal counsel in England with regard to such proceedings. She also accepts the fact the Arizona court had jurisdiction over the divorce and child custody issues as

she requested that forum, and now recognizes the validity of the divorce.

Petitioner had mere physical possession of the minor child Christina at the time of her removal by Respondent, and she did not have any legal rights of custody of said child at that time. It is true that prior to the entry of an order specifically awarding custody to a particular parent, both parents are considered as having legal custody. In this case, however, full custody rights with respect to the minor child had been expressly awarded to Respondent in a lawful proceeding of which Petitioner was clearly aware and with respect to which she had been given an opportunity to respond and/or to participate. The temporary order was made into a permanent order after the Arizona court determined that she had failed to respond to any of the pleadings which had been served on her. In fact, Petitioner acknowledges the validity of the Decree of Dissolution and has acquiesced in the legal ramifications of the Court's findings and orders. Specifically, she accepts that she is now divorced. In short, Petitioner does not dispute the existence of the decree nor has she attacked its validity. Under the circumstances, Petitioner clearly does not meet the threshold prerequisites necessary to invoke the Hague Convention by alleging that a wrongful removal had taken place from a person exercising rights of custody pursuant to the Convention's Article 3.[2]

## B. *Habitual Residence of the Child*

As discussed above, the term "habitual residence" is not defined by the Convention. To invoke the protection of the Convention, the taking or retention of a minor child must have occurred from a place where the child habitually resides. The court has concluded that the facts and circumstances of this case compel a finding that Christina was not a habitual resident of Birmingham, England so as to trigger the protection of the Hague Convention. Instead she is, and has always been a habitual resident of Phoenix, Arizona.

Accordingly, without passing judgment on the underlying issues of child custody and/or visitation, and pursuant to Article 27 of the Hague Convention,

IT IS ORDERED denying Petitioner's Petition for Relief under The Hague Convention.

FURTHER as Respondent, the lawful custodian of the minor child, has regained custody of said child,

IT IS ORDERED denying Respondent's Cross–Petition under The Hague Convention as moot.

FURTHER ORDERED denying Petitioner's Motion to Dismiss the Cross–Petition filed by Respondent as moot.

FURTHER ORDERED that pursuant to Article 19 of the Hague Convention, any modifications to the divorce decree and or provisions relating to child custody or visitation must be pursued in the Superior Court of Arizona, in and for the County of Maricopa.

---

**2.** If the Court were to accept Petitioner's interpretation of the Convention, nothing that happened prior to May 24, 1990, would be relevant in determining whether to grant relief to Petitioner under the Convention. Thus, even if Petitioner had appeared in Arizona, participated in the custody proceedings, lost and had then moved the child to a hiding place, even for a day, as long as she had the intent to remain in the hiding place, she could use the Hague Convention to defeat her husband's right to custody and to carry out precisely what the Hague Convention was established to defeat—wrongful retention of a minor child. Moreover, the Court would be condoning the Petitioner's deliberate disregard of Arizona's laws despite her recognition that the Arizona Superior Court was the proper jurisdiction for such a domestic relations action.