**CIOTOLA**

v.

**FIOCCA.**

Court of Common Pleas of Ohio,
Franklin County,
Domestic Relations Division.

No. 96DR–06–2645 DRC.

Decided March 12, 1997.

*Robert A. Bracco* and *Gary J. Gottfried,* for plaintiff.
*Albert F. Dalena* and *Colleen H. Briscoe,* for defendant.

SUSAN BROWN, Judge.

This matter is before the court upon consideration of the following: (1) plaintiff's objections, filed December 20, 1996, to the decision of the magistrate dated December 11, 1996; (2) defendant's brief in opposition to plaintiff's objections, filed February 21, 1997; (3) plaintiff's reply to defendant's brief in support of the magistrate's order, filed February 28, 1997; (4) plaintiff's motion to allow additional evidence/testimony, filed January 24, 1997; and (5) defendant's memorandum opposing plaintiff's motion for additional evidence, filed February 12, 1997. The magistrate heard this matter initially upon defendant's petition for return of Miriam Fiocca, the minor child, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and the International Child Abduction Remedies Act ("ICARA"), Section 11603(b), Title 42, U.S.Code. Based upon the evidence presented at trial, the magistrate found that the child's habitual residence prior to her removal and retention in the United States was Italy and that defendant was lawfully exercising his custody rights over the child prior to her removal and retention. The magistrate further found that plaintiff had failed to establish that returning the child to Italy would expose her to physical or psychological harm. Accordingly, the magistrate concluded that the Miriam Fiocca should be promptly returned to defendant in the Italian Republic pursuant to the provisions of the Hague Convention.

Plaintiff objected to the decision of the magistrate on December 20, 1996, arguing, in essence, that (1) the magistrate applied the wrong legal standard when determining that the child had one habitual residence; (2) the magistrate erred when determining that Italy was the habitual residence of the minor child; (3) the magistrate erred in finding that defendant had not acquiesced in plaintiff's and the child's remaining in the United States; (4) the magistrate erred in

finding that returning the child to Italy would not pose a grave psychological harm to the child; (5) the magistrate's failure to apply the best interests test when determining whether to return the child to Italy violated the child's due process and equal protection rights as guaranteed by the United States and Ohio Constitutions; (6) the magistrate failed to consider the impossibility of performance when ordering that the child return to Italy, which may subject the plaintiff to criminal sanctions; (7) the magistrate erred by ordering the child returned to the defendant rather than to her country of habitual residence under the convention terms; (8) the magistrate erred in that returning the child to Italy would violate the fundamental principles relating to guarantees of freedom under Ohio law; (9) the magistrate erred in determining that service of the petition was proper and that proceeding to trial violated plaintiff's due process rights as guaranteed by the United States and Ohio Constitutions; and (10) the magistrate's decision is against the manifest weight of the evidence.

On December 23, 1996 and February 12, 1997, plaintiff filed supplemental objections and a legal brief in support of her objections, respectively. An examination of these documents reveals that plaintiff submitted arguments in support of the original objections, as well as additional arguments challenging the constitutionality of specific provisions of the Hague Treaty. Pursuant to Civ.R. 53(E), objections to a magistrate's decision *shall* be filed within fourteen days of the filing of the decision and shall state with particularity the grounds of objection. Nevertheless, a trial court may, in its discretion, consider additional evidence and objections that were filed out of time. *Conroy v. Conroy* (Aug. 12, 1993), Franklin App. No. 93AP–27, unreported, 1993 WL 310421; *Eitel v. Eitel* (Aug. 30, 1994), Franklin App. No. 93APF12–1745, unreported, 1994 WL 479450.

Plaintiff, an American citizen, was married to defendant, a citizen of Italy, on September 4, 1994, in the town of Pescocostanzo, province of L'Aquila, Italy. After their marriage, the parties resided in Castel di Sangro, province of L'Aquila, Italy, in a condominium owned by plaintiff's mother. Plaintiff's grandmother and aunt also resided in the condominium building. On February 9, 1995, plaintiff filed a certificate of residence with the town of Castel di Sangro, which entitled her to all the benefits of an Italian citizen. On February 28, 1995, the parties' only child, Miriam Nevina Fiocca, was born. Sometime thereafter, the parties filed a "State of the Family" certificate with the town of Castel di Sangro, which verified where the family resided and may have enabled them to receive public assistance, if they qualified.

On April 18, 1995, plaintiff and Miriam came to Ohio for approximately six weeks, in order to visit with plaintiff's relatives. On November 18, 1995, plaintiff and the minor child returned to Ohio to visit relatives and remained in the United States for one month. On June 6, 1996, plaintiff and Miriam came to Ohio for a

third time in order to attend her brother's wedding. Defendant had a plane ticket and was to meet plaintiff and the child in Ohio on June 26, 1996, and the parties were scheduled to return to Italy on July 8, 1996. On June 20, 1996, plaintiff called defendant and requested that he not come to Ohio for the wedding. Although defendant agreed to forgo the trip, he believed that plaintiff and Miriam would return to Italy on July 8, 1996. On July 3, 1996, defendant received papers regarding this legal separation action. Upon receiving the complaint and summons to appear, defendant attempted to contact plaintiff; however, she was unavailable to take the telephone call. Sometime thereafter, defendant had contact with plaintiff and inquired about the legal documents and accused her of kidnapping Miriam. It was not until July 3, 1996 that defendant first suspected that plaintiff and Miriam might not return to Italy.

Plaintiff's first and second objections will be addressed together as they each relate to the habitual residence of the child. As indicated by the magistrate, the Hague Convention does not define the term "habitual residence." The drafters intended this omission in order to keep the concept fluid and fact-based, without becoming rigid with technical rules and presumptions. *Levesque v. Levesque* (D.Kan.1993), 816 F.Supp. 662, 665; *In re Application of Ponath* (D.Utah 1993), 829 F.Supp. 363, 366. Upon review of the relevant case law, it is clear that when determining habitual residence for purposes of the convention, a trial court must ascertain whether the child has been physically present in any particular place for a sufficient length of time in order to gain a sense of acclimation and have a degree of settled purpose. *Feder v. Evans–Feder* (C.A.3, 1995), 63 F.3d 217. Since this determination becomes particularly difficult when the focus is on a child of tender years, a court should also consider the "overtly stated intentions and agreements of the parents" during the period *preceding* the wrongful abduction or retention. *Id.* at 223, citing *In re Bates* (1989), No. CA 122–89, High Court of Justice, Family Div. Ct. Royal Courts of Justice, United Kingdom. Once established, the child's habitual residence can be altered only by a change in geography *prior to the questioned removal or retention*, or by passage of time, not by changes in parental affection and responsibility. *Friedrich v. Friedrich* (C.A.6, 1993), 983 F.2d 1396 at 1401–1402.

Plaintiff argues that the magistrate erred in finding that a person can have only one habitual residence. Plaintiff maintains that prior to defendant's Hague Convention petition, Miriam had spent six months of her nineteen-month life in Ohio; thus, she contends that Ohio should be considered the child's habitual residence. When addressing the issue of habitual residence, the U.S. Court of Appeals for the Sixth Circuit in *Friedrich* stated:

"A person can only have one habitual residence. On its face, habitual residence pertains to customary residence prior to the removal. The court must look back in time, not forward." *Id.* at 1401.

Further, in *Rydder v. Rydder* (C.A.8, 1995), 49 F.3d 369, 373, the U.S. Court of Appeals for the Eighth Circuit indicated that "there is no real distinction between habitual and ordinary residence."

In the instant action, defendant did not file the Hague Convention petition until September 23, 1996; however, he accused plaintiff of kidnapping Miriam on or about June 3, 1996. While Miriam may have spent a total of six months of her life in Ohio, she had never been in the United States longer than six weeks at any one time without a scheduled return to Italy or defendant demanding her return. Upon considering the "overtly stated intentions and agreements" between plaintiff and defendant prior to the alleged wrongful retention, it is clear that the parties (1) wed in Italy, (2) registered plaintiff as a resident of Castel di Sangro, (3) had their only child, Miriam, while in Italy, (4) registered as a family residing in Castel di Sangro, (5) made attempts to buy a home in Castel di Sangro, and (6) were scheduled to return to Italy as a family on July 8, 1996.

Although plaintiff testified that the parties had discussed the idea that she keep a residence in the United States in case "things didn't work out" between them, these discussions are irrelevant, as they did not include the residency of a child born of the marriage. But for plaintiff's change of heart regarding the parties' marital status, the court finds that she and Miriam would have returned to Italy on July 8, 1996 as originally planned. In applying the relevant case law, this court finds that the magistrate properly concluded that Miriam's single place of habitual residence prior to her retention in the United States was Castel di Sangro, Italy. Further, Miriam's occasional visits to Ohio did not alter her habitual residence in Italy. Accordingly, plaintiff's first and second objections are overruled.

Next, plaintiff argues that the magistrate erred in finding that defendant had not acquiesced in plaintiff's and Miriam's remaining in the United States. Initially, plaintiff suggests that the magistrate applied the wrong legal standard in that she classified this case as a wrongful removal rather than a wrongful retention. Plaintiff argues that the magistrate erroneously found that she wrongfully *removed* Miriam from Italy. Pursuant to the Hague Convention, "wrongful removal" refers to the taking of a child from the person who was actually exercising custody of the child, whereas "wrongful retention" refers to the act of keeping the child without consent of the person who was actually exercising custody. See JICAC: Text and Legal Analysis found at Pub.Notice 957, 51 Fed.Reg. 10494, 10503. A review of the decision, however, reveals that the magistrate considered both the wrongful removal and wrongful retention

provisions of the convention and concluded that "Miriam was wrongfully retained in Ohio" by plaintiff. Further, defendant consistently emphasized that plaintiff and Miriam left Italy with his consent but that plaintiff *wrongfully retained* the minor child in Ohio. Therefore, the magistrate employed the proper analysis.

■ With regard to defendant's *alleged* acquiescence, plaintiff spoke with defendant on June 20, 1996, and told him not to come to the United States as the parties had originally planned. At this point, the facts become somewhat unclear. Plaintiff testified that she told defendant she needed time to think about their marriage. Plaintiff indicated that defendant agreed to give her space, and that as a result of the conversation, he understood that her return date was unknown. Defendant, however, testified that he was simply told not to come to Ohio due to his bad relationship with his mother-in-law. Defendant maintains that he was unaware of plaintiff's intentions of remaining in the United States until he received the legal documents on July 3, 1996. On or about July 3, 1996, defendant spoke with plaintiff and inquired into visitation time with Miriam. When plaintiff insinuated that she would not be returning to Italy in the immediate future, defendant immediately accused her of kidnapping their daughter. Thereafter, defendant testified that plaintiff was "unavailable" when he attempted to call her in Ohio. On June 26, 1996, counsel for defendant sent a letter to plaintiff and her attorney regarding defendant's intention to have Miriam ordered back to Italy by way of the Hague Convention. Despite these actions, plaintiff maintains that she was unaware that defendant wanted Miriam back in Italy until September 27, 1996, when her attorney called regarding the hearing on the instant petition. Upon consideration of the evidence, however, it is clear that defendant did not acquiesce in plaintiff's unilateral decision to retain Miriam in the United States once he realized her intentions of remaining in Ohio. Accordingly, plaintiff's third objection is without merit and is hereby overruled.

■ In her fourth objection, plaintiff argues that the magistrate erred in finding that returning the child to Italy would not pose grave psychological harm to the minor child. Pursuant to Article 13(b) of the convention, children who are wrongfully removed or retained shall be promptly returned unless it can be established by clear and convincing evidence that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." It is well established that the exceptions under the convention are to be restrictively interpreted and applied. *Friedrich v. Friedrich* (C.A.6, 1996), 78 F.3d 1060; *Caro v. Sher* (Ch.Div.1996), 296 N.J.Super. 594, 687 A.2d 354. In *Friedrich*, the court clarified that a child would be subjected to a "grave risk of harm" for purposes of the convention if (1) the child was put in imminent danger prior to the resolution of the custody dispute or (2) the child experienced serious abuse, neglect, or

extraordinary emotional dependence, and the court of the country of habitual residence was incapable of giving, or unwilling to give, the child adequate protection.

Plaintiff testified that defendant has an explosive temper and indicated that she had been a victim of domestic violence during the marriage. The facts surrounding the incidents of alleged abuse are seriously contested. Nevertheless, plaintiff neither reported any situations of abuse to the local authorities nor sought medical attention as a result of domestic violence. A social report was made concerning defendant and his extended family in Castel di Sangro. The report concluded that neither defendant nor anyone in the Fiocca family presented any significant problems that might prove detrimental or even harmful to the normal physical and psychological development of the minor child. Plaintiff, however, argues that it would be detrimental to a child of tender years, like Miriam, to be removed from her primary caretaker. Dr. Lowenstein, a licensed psychologist, testified that separating a child of nineteen months from its primary caregiver *could* pose both an emotional and developmental risk of harm to the child. However, Dr. Lowenstein had not evaluated any of the parties in this action, and his testimony was elicited entirely by way of hypothetical fact patterns. Based upon the record, the court finds that the evidence presented at trial does not establish any serious risk that either defendant or anyone associated with him would jeopardize Miriam's welfare or place the child in grave risk of physical or psychological harm. Accordingly, plaintiff's fourth objection is without merit and is hereby overruled.

Plaintiff's fifth and eighth objection will be addressed together as each relates to the child's fundamental freedoms and rights to due process and equal protection as guaranteed by the United States and Ohio Constitutions. Plaintiff argues that the magistrate's failure to apply the "best interests" test to the instant action violated Miriam's constitutional rights to due process and equal protection, thereby violating the child's fundamental freedoms. Plaintiff also argues that Article 12 of the Hague Convention is unconstitutional on its face, in that it creates an arbitrary classification for children in the examination of habitual residency.

The United States, convinced that the interests of children are of paramount importance in matters relating to their custody, became a party to the Hague Convention on April 29, 1988 and codified the ICARA as the implementing legislation in Sections 11601–11610, Title 42, U.S.Code. The intent of the Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as, to secure protection for rights of access." Hague Convention, Preamble. In passing the

ICARA, Congress declared that "[t]he convention and this chapter empower courts in the United States to determine only rights under the Convention and *not the merits of any underlying custody claims.*" (Emphasis added.) Section 11601(b)(4), Title 42, U.S.Code; Hague at Article 16. It has been held that when determining a petition under the Hague Convention, a trial court should not intrude upon a foreign tribunal's subject matter jurisdiction by addressing such issues as psychological profiles, detailed evaluations of parental fitness, evidence concerning lifestyles, and the nature and quality of relationships. *Tahan v. Duquette* (App.Div.1992), 259 N.J.Super. 328, 613 A.2d 486. Further, the Superior Court of New Jersey in *Loos v. Manuel* (Ch.Div.1994), 278 N.J.Super. 607, 651 A.2d 1077, stated that "in proceedings under the Convention, the court's role is not to make traditional custody decisions. It is to determine in what jurisdiction the child should be physically located, so that the proper jurisdiction can make custody decisions." See, also, *Caro, supra.* Plaintiff argues, however, that the ICARA directs a trial court to consider the best interests of a child when determining jurisdiction under the provisional remedies section of Section 11604, Title 42, U.S.Code. Upon considering the purpose of the Hague Convention and the ICARA, as well as reviewing the relevant case law, this court finds that an examination of the best interests of a child under traditional Ohio laws when determining habitual residency under a Hague Convention petition would violate the aim and spirit of the convention.

With regard to plaintiff's equal protection argument, the constitutional effect of a classification based upon the residency of a child prior to the commencement of a petition in relation to Article 12 of the Hague Convention presents a federal question, which would be more properly entertained in a federal forum. Nevertheless, plaintiff's fifth and eighth objections are without merit and are hereby overruled.

As to the sixth objection, plaintiff argues that the magistrate erred by failing to consider that ordering that the child return to Italy might subject plaintiff to criminal sanctions. The possibility of criminal sanctions against an individual who wrongfully removed or retained a child is not a defense under the Hague Convention. Further, the minor child may be returned to Italy without plaintiff also going to Italy. The record reveals that defendant testified that he would drop all criminal charges against plaintiff if she and Miriam returned to Italy. At the hearing on plaintiff's objections, counsel for defendant represented that there would be no pursuit of criminal remedies if plaintiff were to return to Italy. Plaintiff's sixth objection is without merit and is hereby overruled.

In plaintiff's seventh objection, she argues that the magistrate erroneously ordered Miriam returned to defendant, rather than to her country of

habitual residence as provided in the Convention. An examination of the treaty reveals that the convention provides solely for the "return of the child." Article 6(f); Article 8; Article 12. The determination of which parent will be awarded temporary custody during the pendency of any custody action is to be determined by the court of the country of habitual residence. *Tyszka v. Tyszka* (1993), 200 Mich.App. 231, 503 N.W.2d 726. Accordingly, plaintiff's seventh objection is well taken. The magistrate's decision is modified to order that Miriam be returned to Castel di Sangro, province of L'Aquila, Italy.

With regard to the ninth objection, plaintiff argues that the magistrate erroneously found that service of defendant's Hague Convention petition was proper. In proceeding to trial, plaintiff argues that the magistrate violated her due process rights as guaranteed by the United States and Ohio Constitutions. The convention itself does not specify notice requirements; however, Section 11603(c), Title 42, U.S.Code provides that "notice of an action brought under subsection (b) of this section shall be given in accordance with the applicable law governing notice in interstate child custody proceedings." Section 4 of the Uniform Child Custody Jurisdiction Act ("UCCJA") and Part (e) of the Parental Kidnapping Prevention Act ("PKPA") provide that reasonable notice and opportunity to be heard must be given to all parties before a custody determination is made. See Section 1738A, Title 28, U.S.Code; *Brooke v. Willis* (S.D.N.Y.1995), 907 F.Supp. 57. Section 5 of the UCCJA also provides that notice "shall be given in a manner reasonably calculated to give actual notice." *Id.* Pursuant to R.C. 3109.21 *et seq.*, Ohio's version of the UCCJA, notice of a parenting proceeding shall be served, mailed, delivered, or last published at least twenty days before any hearing in this state. R.C. 3109.23(C).

Plaintiff argues that she did not receive mail service of defendant's petition until September 30, 1996, three days prior to the magistrate's hearing. However, the record reveals that as early as June 26, 1996, plaintiff was informed by defense counsel that a petition under the Hague Convention would be filed. Counsel for both parties had correspondence regarding the immediate petition throughout July 1996. Based upon the record, plaintiff had constructive notice of defendant's impending Hague Convention petition. More important, plaintiff has not established that she was prejudiced by the magistrate's failure to grant a continuance. Upon consideration of the notice requirements under the Hague Convention, the ICARA, the UCCJA, and the PKPA, this court finds that plaintiff received proper notice and service of defendant's Hague Convention petition and had an opportunity to present a defense. Plaintiff's ninth objection is without merit and is hereby overruled.

In plaintiff's tenth objection, she argues that the decision of the magistrate is against the manifest weight of the evidence. It is well established

that decisions supported by competent, credible evidence going to all essential elements of an action shall not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578; *Flynn v. Flynn* (1984), 15 Ohio App.3d 34, 15 OBR 57, 472 N.E.2d 388. Further, the magistrate, as the trier of fact, is in the best position to weigh the evidence presented, assess the credibility of the witnesses, and make an informed factual determination therefrom. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Based upon the record, it is clear that defendant established by a preponderance of the evidence that the child's place of habitual residence prior to the wrongful retention was Castel di Sangro, Italy, that defendant was lawfully exercising his custody rights over Miriam prior to the time of her retention in the United States, and that plaintiff wrongfully retained the child in Ohio, within the meaning of the convention. Plaintiff, however, presented insufficient evidence to establish that the child would be exposed to grave physical or psychological harm if returned to Italy, or any of the other exceptions provided in Article 13. Accordingly, the decision of the magistrate is supported by the manifest weight of the evidence. Plaintiff's tenth objection is without merit and is hereby overruled.

Accordingly, defendant's objections to the decision of the magistrate are overruled. The minor child, Miriam Nevina Fiocca, shall be immediately returned to Italy pursuant to the Hague Convention on the Civil Aspects of International Child Abduction. Plaintiff's motion regarding the presentation of additional evidence is hereby overruled. Upon consideration of this decision, plaintiff's motion regarding the appointment of a guardian *ad litem* is moot and is hereby dismissed.

*So ordered.*