**06-5614-cv**
**Duran v. Beaumont**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: March 4, 2008                                                      Decided: July 18, 2008)

Docket No. 06-5614-cv

_____

HUGO ALEJANDRO VILLEGAS DURAN,

*Petitioner-Appellant,*

—v.—

JOHANA IVETTE ARRIBADA BEAUMONT,

*Respondent-Appellee.*

_____

Before:

WINTER and WESLEY, *Circuit Judges*, and COGAN, *District Judge.*[*]

Appeal from a final judgment of the United States District Court for the Southern District of New York (Robinson, J.) dismissing for lack of jurisdiction petitioner's motion for return of his daughter to Chile. We affirm and hold that petitioner did not actually possess custody rights at the time of his daughter's removal to the United States, such as to allow him to seek return of her, under the Hague Convention, implemented by the International Child Abduction Remedies Act.

Judge Wesley dissents in a separate opinion.

_____

[*] The Honorable Brian M. Cogan, United States District Court for the Eastern District of New York, sitting by designation.

JOSHUA A. BROOK (Roderick L. Arz, *on the brief*), Arnold & Porter, LLP, New York, N.Y., *for Appellant*,

ROBERT D. ARENSTEIN, New York, N.Y., *for Appellee.*

COGAN, District Judge:

Appellant, Hugo Alejandro Villegas Duran, seeks an order compelling Appellee, Johana Ivette Arribada Beaumont, to return their daughter, Valentina Almendra Villegas Arribada, to Chile under the Hague Convention on the Civil Aspects of International Child Abduction, done at the Hague on Oct. 25, 1980, T.I.A.S. No. 22,670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed.Reg. 10,494 (1986) (the "Hague Convention"), implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. § 11601 *et seq.* (2000). The United States District Court for the Southern District of New York (Robinson, J.) denied Appellant's petition for an order of return, finding that Appellant does not have rights of custody under the Hague Convention.

We hold that Appellant's rights do not constitute rights of custody within the meaning of the Hague Convention. Because a district court has jurisdiction to order the return of a child under the Hague Convention only if the child has been removed in breach of a petitioning parent's custodial rights, the district court lacked jurisdiction to order the return of the child and properly dismissed the petition.

**BACKGROUND**

Appellant and Appellee, both Chilean citizens, were involved romantically but never married. Their daughter was born on April 22, 2001, in Chile and lived with both parents until they separated in 2004. While the separated couple lived in Chile, the child lived with Appellee, and Appellant had visitation rights.

Under Chilean law,[1] Appellee could not remove the child from Chile without Appellant's permission, and Appellant refused to consent. Therefore, Appellee petitioned the Eighth Minors' Court of Santiago, and the court issued an order authorizing her to travel to the United States with the child for three months. Appellee and the child departed Chile on August 3, 2005. The travel period expired on November 3, 2005, but Appellee remained with the child in the United States, in violation of the Chilean court's order. According to a certification issued by the Eighth Minors' Court of Santiago on August 28, 2006, a final determination of sole custody for the child has not yet been determined.

On July 25, 2006, Appellant filed a Petition for the Return of Child and an Order to Show Cause in the Southern District of New York. The district court held evidentiary hearings on the Petition and found that it lacked jurisdiction to order the return of the child because Appellant did not have rights of custody under Chilean law. The court then denied Appellant's motion for reconsideration. This appeal followed.

## DISCUSSION

The issue before this Court is whether under the Hague Convention Appellant has custody rights as opposed to rights of access. If Appellant has custody rights, United States courts would have jurisdiction to order the return of the child. However, if Appellant merely has access rights, as the district court found that he did, then United States courts are without jurisdiction to order this remedy.

[1] Law N° 16,618 – MINORS LAW, TITLE III, JUVENILE COURT SYSTEM – ORGANIZATION AND POWERS, Art. 49, provides: Should the custody of a child have not been granted by the judge to either parent or to a third party, the minor may not exit the country without the authorization of both parents, or from the one who had recognized him …. If such authorization cannot be granted or if, without reasonable grounds, is refused by the person from whom it is required, it may be granted by the juvenile judge having jurisdiction over the place of residence of the minor.

In a case brought under the Hague Convention, we review the district court's conclusions of law de novo. *Croll v. Croll*, 229 F.3d 133, 136 (2d Cir. 2000). "In cases arising under the Convention, a district court's factual determinations are reviewed for clear error." *Blondin v. Dubois*, 238 F.3d 153, 158 (2d Cir. 2001). In addition, "[t]he [d]istrict [c]ourt's application of the Convention to the facts it has found, like the interpretation of the Convention, is subject to de novo review." *Id.*

"In construing a treaty, as in construing a statute, we first look to its terms to determine its meaning." *United States v. Alvarez-Machain*, 504 U.S. 655, 663 (1992). Although we begin with the text, we may also "look beyond the written words" to other factors, such as the "history of the treaty, the negotiations, and the practical construction adopted by the parties," for guidance. *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534-35 (1991) (internal quotations omitted).

The Hague Convention was entered into force for the United States on July 1, 1988, for the purpose of "protect[ing] children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Preamble, 51 Fed.Reg. at 10,498. The Hague Convention is specifically designed to prevent the removal or retention of children by close family members. "To deter family members from removing children to jurisdictions more favorable to their custody claims in order to obtain a right of custody from the authorities of the country to which the child has been taken, the Hague Convention attempts to deprive [their] actions of any practical or juridical consequences." *Gitter v. Gitter*, 396 F.3d 124, 129-30 (2d Cir. 2005) (internal quotations omitted). The Hague Convention adopts the principle that the child's country of "habitual residence" is "best placed to

decide upon questions of custody and access." *Croll*, 229 F.3d at 137 (quoting Elisa Pérez-Vera, *Explanatory Report: Hague Conference on Private International Law*, in 3 Acts and Documents of the Fourteenth Session (Child Abduction) 426, 434-35, ¶ 34 (1980)).[2] Both the United States and Chile are signatories to the Hague Convention.

"A petitioner cannot invoke the protection of the Hague Convention unless the child to whom the petition relates is 'habitually resident' in a State signatory to the Convention and has been removed to or retained in a different State." *Gitter*, 396 F.3d at 130. Since the Hague Convention distinguishes between two types of parental rights – rights of custody and rights of access, granting different protections to parents with regard to each type of rights – a removal or retention is considered "wrongful" for the purpose of return of the child under the Hague Convention where: (a) it is in breach of rights of custody attributed to a person under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention. Hague Convention, art. 3, 51 Fed.Reg. at 10,498.

This Court has recognized that rights of custody may arise "by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State." *Gitter*, 396 F.3d at 130. Thus, in order to prevail on a claim under the Hague Convention, a petitioner must establish by a preponderance of the evidence that (1) the child was habitually resident in one State and then removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the

---

[2] Elisa Pérez-Vera was "the official Hague Conference reporter for the Convention." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed.Reg. at 10,503. "Her explanatory report is recognized by the Conference as the official history and commentary on the Convention," *id.*, and we have previously said that "it is an authoritative source for interpreting the Convention's provisions," *Croll*, 229 F.3d at 137 n. 3.

5

place of habitual residence; and (3) the petitioner was exercising custody rights at the time of the removal or retention. *See* 42 U.S.C. § 11603(e)(1)(A); *Gitter*, 396 F.3d at 130-31.

The Hague Convention distinguishes between rights of custody and rights of access. It defines the latter as "the right to take a child for a limited period of time to a place other than the child's habitual residence." Hague Convention, art. 5, 51 Fed.Reg. at 10,498. Although remedies exist in the event that a child is removed in breach of access rights, recourse for such removal does not include an order of return to the child's place of habitual residence. *See id.* art. 21, 51 Fed.Reg. at 10,500. In such situations, district courts may fashion a remedy ordering the custodial parent who has removed the child to allow and financially provide for periodic visits by the non-custodial parent.

Neither the Hague Convention nor its implementing legislation defines "habitual residence." However, we have previously articulated the standard used to determine a child's habitual residence.

> First, the court should inquire into the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time that their intent was shared. In making this determination the court should look, as always in determining intent, at actions as well as declarations. Normally the shared intent of the parents should control the habitual residence of the child. Second, the court should inquire whether the evidence unequivocally points to the conclusion that the child has acclimatized to [a] new location and thus has acquired a new habitual residence, notwithstanding any conflict with the parents' latest shared intent.

*Gitter*, 396 F.3d at 134.

Applying these principles to the facts of this case, we hold that the district court properly found Chile to be the child's place of habitual residence. As both parents are Chilean citizens, their child was born in Chile and lived in Chile until August 2005 when Appellee took her to the United States, a settled mutual intent to make Chile the child's permanent home can be easily

6

concluded. There is no evidence to the contrary and certainly no joint settled intention to abandon Chile as the habitual residence. Furthermore, Appellee represented to the Chilean court that the child's removal was only temporary and that she intended to return the child to Chile after a period of three months. Therefore, Chile, and not the United States, is the habitual place of the child's residence.

We now turn to the primary issue of this case, that is, whether Appellant has rights of custody. Under Chilean law, when parents live separately, the responsibility for the personal care of their child rests with the mother. *See* CODE CIVIL Section 225 (Chile). However, the other parent still has a *ne exeat* right: the right to determine whether the child will leave the country. *See* MINORS LAW 16,618 art. 49. Although Appellee was granted permission by order of the Chilean court to leave the country with the child for three months, violation of the conditions of that order can be a violation of Appellant's *ne exeat* right.

In interpreting the Hague Convention, this Court has held that violating a *ne exeat* right is insufficient to qualify as a violation of custodial rights. *See Croll*, 229 F.3d at 138-140. In *Croll*, we found that a *ne exeat* clause does not create rights of custody within the meaning of the Hague Convention. 229 F.3d at 135. We explained that "custody of a child entails the primary duty and ability to choose and give sustenance, shelter, clothing, moral and spiritual guidance, medical attention, education, etc., or the (revocable) selection of other people or institutions to give these things." *Id.* at 138. We have reasoned that custody under the Hague Convention "references a bundle of rights … and is in some tension with the idea … that one can have custody by holding a *single* power such as the veto conferred by a *ne exeat* clause." *Id.* at 139. Furthermore, we have said that although a *ne exeat* right limits a custodial parent's power to

7

expatriate a child, it does not amount to a power to determine where the child will live. *Id.* at 139. To hold otherwise would be "unworkable" because the Hague Convention assumes that "the remedy of return will deliver the child to a custodial parent who (by definition) will receive *and care for* the child. It does not contemplate return of a child to a parent whose sole right-to visit or veto-imposes no duty to give care." *Id.* at 140.

We agree with the district court that Appellant did not establish the custody requirement by a preponderance of the evidence. Appellant primarily relies on an affidavit from the Chilean Corporation of Judicial Assistance of the Region Metropolitana (the "Central Authority") as support for his argument that he has custodial rights under Chilean law. Appellant maintains that the district court failed to afford the Chilean Authority's interpretation of Chilean law appropriate weight. The issue of whether the Central Authority's affidavit constitutes an authoritative interpretation for the purposes of the Hague Convention is inconclusive for a number of reasons, including the fact that the Chilean Authority may not have had all information on this case available to it at the time that it made its assessment. However, it is readily apparent that even if it is authoritative, the district court was not bound to follow it. As this Court has previously stated, "a foreign sovereign's views regarding its own laws merit – although they do not command – some degree of deference." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 92 (2d Cir. 2002). Reasons existed for the district court to refrain from giving the affidavit absolute deference. Most importantly, the Central Authority's conclusion that joint custody exists under Chilean law as a default rests almost exclusively on the *ne exeat* right. We have already stated that as we interpret the Hague Convention, this veto power does not confer rights of custody.

8

Appellant misinterprets the weight the district court gave to the opinion of Appellee's witness. The district court explicitly found that this individual was *not* an expert, and there is no reason to conclude that it afforded his testimony substantial weight. Instead, the district court looked to the rights Appellant claimed to possess in order to determine whether he, in fact, had custody rights.

Appellant also relies on the fact that he had visitation rights and that he paid for certain medical expenses. He points to Article 229 of the Chilean Civil Code which provides that a parent "who is not personally responsible for the care of a child will not be deprived of the right … to maintain a direct and regular relationship with the child." However, this article addresses visitation rights only and not rights to care for the child under a custodial relationship.

At oral argument, the district court attempted on a number of occasions to elicit what rights Appellant has that he claims would amount to custody. However, Appellant was unable to offer anything more than the language of Article 229, visitation rights, payment of some expenses and possibly registering the child for school.[3] As the district court stated:

> I don't see where he had rights. The one document that you showed me gave him a very specific right …. It said one very specific thing. On Sundays, from 10 to 8 or 10 to 10, depending on season, he got to see the child. It didn't say, and by the way, these are a list of the other things you get to decide in the child's life. You get to decide, as I said, what school the child goes to. You get to bring the child to school every day or pick the child up from school every day or make determinations about what classes the child will take or what extracurricular activities the child will be in. Those are the kinds of things that would lead me to say he was given custodial rights versus he was given access. I don't see any of that.

---

[3] Compare these rights with the rights detailed in <u>Norden-Powers v. Beveridge</u>, 125 F.Supp.2d 634 (E.D.N.Y. 2000), where the district court found rights of custody. In that case, one petitioner presented a consent approved by an Australian court affording him joint guardianship. He also testified as to how he participated in educational decisions, studied with his children and aided in filling out forms for course selection, discussed dental care arrangements with respondent, "recommended and offered to facilitate designating a general practitioner for medical needs", taught his children how to surf and maintained regular communication. *Id.* at 639.

9

On the other hand, Appellee has the authority to make all these crucial decisions for the child. The only restrictions on Appellee's decision-making power under Chilean law are that she has to allow Appellant his scheduled visitations and she cannot take the child out of the country without either Appellee's permission or a court order.

The bundle of rights Appellant lays claim to does not create rights of custody under the Hague Convention and ICARA; they cumulatively amount merely to a right of access. We find, as the district court concluded, that Appellant has no right to make determinations about the wellbeing and conduct of the child. These rights belong to Appellee.

## CONCLUSION

For the foregoing reasons, we hold that, under the Hague Convention, the rights conferred on Appellant do not amount to rights of custody. The removal of the child from Chile, although in violation of a lawful order from a Chilean court, did not breach rights of custody and was therefore not "wrongful" under the Hague Convention. The district court's order dismissing the petition for lack of jurisdiction and ordering periodic visitation of the child for Appellant is AFFIRMED.

WESLEY, *Circuit Judge*, dissenting:

The majority has correctly identified the central question in this case: Whether Appellant has the "rights of custody" over his daughter necessary to invoke the Hague Convention's remedy of return of the child? *See* Hague Convention on the Civil Aspects of International Child Abduction art. 3, Oct. 25, 1980, T.I.A.S. No. 22,670, 1343 U.N.T.S. 89. Under the facts of this case, where there has been no judicial determination of custody, the answer to that question depends on whether, under Chilean law, the default rule when the unmarried parents of a minor separate is that they share joint custody or that the mother has sole custody. The majority determined that, notwithstanding the affidavit from the Chilean Central Authority asserting that separated unmarried parents share joint custody by operation of Chilean law, this Circuit's decision in *Croll* requires the conclusion that Appellant had only rights of access. I disagree and would vacate the decision below and remand this case for proceedings consistent with this Circuit's practice of giving some deference to a foreign sovereign's view of its own law.

## DISCUSSION

In *Croll*, we held that a custody decree that granted a father access rights and contained a *ne exeat* clause, while explicitly granting sole custody of the minor to her mother, did not bestow the sort of custodial rights on the father necessary for him to invoke the right of return under the Hague Convention. *Croll v. Croll*, 229 F.3d 133, 134-35 (2d Cir. 2000). The majority finds that this forecloses Appellant's argument that Article 49 of the Minor Law's *ne exeat* clause[1] and

---

[1] This provision is reprinted in footnote 1 of the majority's opinion.

11

Section 229[2] of the Civil Code's mandate that the parent without "personal care" of the child has the "right" and "duty" to maintain a "direct permanent relationship" with the child are indicative of the fact that, under Chilean law, parents share custody of a minor in the absence of any judicial decree to the contrary.[3]

I believe that the majority over-reads *Croll*. *Croll* undoubtedly holds that a *ne exeat* clause cannot *convert* rights of access into rights of custody in the context of an explicit judicial determination of the respective rights of the parents. However, in my mind, this does not foreclose Appellant's argument that a statutorily enshrined *ne exeat* clause may be *evidence* of a legal regime's recognition of shared "rights of custody" in the absence of any judicial determination. This is particularly true in light of the fact that the Appellant does not solely rely on Article 49's *ne exeat* clause, but also points to Section 229's specific delegation of rights and duties to the parent without "personal care" of the minor. The majority dismisses Section 229 as "address[ing] visitation rights only," but cites no authority for that proposition.[4] Thus, while this

---

[2] Book I of the Civil Code of the Republic of Chile, Title IX: Rights and duties between parents and children, Section 229, provides in relevant part (in translation):

> The father or mother who does not have the personal care of a child shall not be exempted from the duty to sep [sic] a direct, permanent relationship with he/she, and to contact it as frequently and freely as agreed with its guardian or, otherwise, as determined by the judge as being in the best interest of the child.

[3] Appellant does not contest that Appellee, the minor's mother, also has rights of custody pursuant to Section 225 of the Chilean Civil Code, which assigns "personal care" of a minor to her mother "if the parents live separately" in the absence of any mutual agreement or judicial decision to the contrary.

[4] It is similarly unclear on what grounds the district court rejected Appellant's interpretation of Section 229. Carlos Bianchi testified in the district court *as a lay witness* on behalf of Appellee regarding the proper interpretation of the relevant provisions of Chilean law: Article 49 of the Minor Law, and Sections 225 and 229 of the Civil Code. He asserted, in relevant part, that Section 229 grants only rights of access under Chilean law, not rights of

12

Court's case law clearly does not compel Appellant's preferred interpretation of Chilean law, I also do not believe that it requires us to reject it.

The primary evidence that Appellant offers in support of his preferred interpretation of Chilean law is an affidavit from the Chilean Corporation of Judicial Assistance of the Region Metropolitana (the "Central Authority").[5]  The Chilean Authority writes that:

> The "right of custody" alluded [to] by the [Hague] Convention, in [Chilean] legislation . . . is linked [to] and includes the following rights: the "custody," the "personal care of the minor," the "guard[,]" the "patria potestas," and the "right to authorize the minor[']s] exit of the country," which are regulated in different articles contained in different Laws.

Emphasizing the *ne exeat* clause contained in Article 49 as "relevant, especially" in the instant case, the Chilean Authority concludes that "the 'right of custody,' to which the [Hague] Convention . . . refer[s] . . . is shared by [Appellant] Villegas and [Appellee] Arribada."  The Chilean Authority also notes that "both parents have the guard and custody of their daughter" and that "'the decisions of major importance' must be adopted by both parents" under Chilean law.

The majority concludes that even if the Central Authority's affidavit is "authoritative" with respect to Chilean law, "the district court was not bound to follow it."  They explain that

---

custody.  The majority writes that:  "The district court explicitly found that [Bianchi] was *not* an expert, and there is no reason to conclude that it afforded his testimony substantial weight. Instead, the district court looked to the rights Appellant claimed to possess in order to determine whether he, in fact, had custody rights."  Despite the majority's assertion, however, it is hard to tell on what grounds the district court might have rejected Section 229 as a potential source of custodial rights other than Bianchi's testimony to that effect.  Of course, this Court has held that lay testimony on a question requiring expertise is of no probative value. *See Pfeiffer v. Silver*, 712 F.2d 799, 804 (2d Cir. 1983).

[5] The Appellant also provided an unpublished article by Chilean Professor Bernardita Briones Maira that supports his interpretation of Chilean law, as well as a copy of Professor Maira's impressive resume.  Judge Robinson did not mention the article during his oral decision and denied Appellant's motion for reconsideration based on an offer of Professor Maira's testimony on his behalf.

13

even though "a foreign sovereign's views regarding its own laws merit – although they do not command – some degree of deference," "[r]easons existed for the district court to refrain from giving the affidavit absolute deference."  The only such reason cited by the majority is that "the Chilean Authority's conclusion that joint custody exists under Chilean law as a default rests almost exclusively on the *ne exeat* right" – reasoning which they contend conflicts with *Croll*.

I respectfully disagree with the majority for two reasons.  First, it is not clear from the district court's decision whether it gave *any* deference at all to the Central Authority's interpretation of Chilean law.[6]  Indeed, the district court did not even mention the affidavit in justifying his determination that Appellant had no custody rights. This runs counter not only to precedent in this circuit holding that a foreign government's interpretation of its own law merits considerable deference, *see, e.g.*, *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 92 (2d Cir. 2002), but also to precedent of sister circuits suggesting that such deference is particularly favored in the context of determining custody rights under the Hague Convention, *see, e.g.*, *Navani v. Shahani*, 496 F.3d 1121, 1128 (10th Cir. 2007).

Second, it is not at all clear from the Chilean Authority's language that its custody

---

[6] The Hague Convention specifically designates the Central Authority of a contracting State as that State's authoritative voice regarding its view of its own custody laws as relevant to Article 3 of the Convention:

> The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

Hague Convention art. 15.

14

determination rests *solely* on Article 49's *ne exeat* clause, which would be necessary for the district court to dismiss the affidavit entirely even under the majority's reading of *Croll*. For instance, the affidavit specifically distinguishes the "guard" element of custody from the "right to authorize the minor['s] exit of the country," and then notes that separated parents share the former as well as the latter. Moreover, there is language in the affidavit – such as, "'the decisions of major importance' must be adopted by both parents" – which would seem to favor a finding of joint custody under this Court's precedent. *See Croll*, 229 F.3d at 138 ("[C]ustody of a child entails the primary duty and ability to choose and give sustenance, shelter, clothing, moral and spiritual guidance, medical attention, education, etc., or the (revocable) selection of other people or institutions to give these things.").

## CONCLUSION

I see no need to reach a conclusion on the ultimate merits of Appellant's preferred interpretation of Chilean law. I would vacate the district court's decision and remand the case for further proceedings consistent with this Court's practice of giving some deference to a foreign sovereign's view of its own law.[7] The majority notes that "[t]he issue of whether the Central Authority's affidavit constitutes an authoritative interpretation for the purposes of the Hague Convention is inconclusive for a number of reasons, including the fact that the Chilean Authority may not have had all information on this case available to it at the time that it made its assessment." I agree. On remand, the district court could both ensure that the Chilean Authority had access to all of the relevant materials and determine the precise legal basis for the

---

[7] It would also have aided this Court's review of the district court's decision if, on remand, the court clarified its treatment of Bianchi's testimony and Professor Maira's article, as well as its grounds for rejecting the Appellant's interpretation of Section 229 of the Chilean Civil code.

15

Authority's assertion of joint custody (assuming it stands) by following the procedure specified in Article 15 of the Hague Convention for how a judicial authority may obtain a foreign sovereign's authoritative interpretation of its own custody laws.[8]

The bottom line here is that a child has traveled to the United States with her mother and has not returned to Chile as earlier promised. Thousands of miles and two distant and different legal system separate the child from her father. An international accord provides the substantive and procedural mechanisms to resolve the dispute. Adherence to its provisions and careful attention to rights given a parent under Chilean law are central to a fair and just resolution of the dispute. We would expect the same of a Chilean court if a child from the United States were taken there by her mother and failed to return. I would ask for that same careful attention here and therefore I respectfully dissent.

---

[8] *See supra* note 6.