09-3845-cv
*Poliero v. Centenaro*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 21st day of April, two thousand and ten.

PRESENT:

      AMALYA L. KEARSE,
      ROBERT D. SACK,
      DEBRA ANN LIVINGSTON,
                   *Circuit Judges.*

_____

MASSIMO POLIERO,

               *Petitioner-Appellee,*

      v.                                      No. 09-3845-cv

BARBARA CENTENARO,

               *Respondent-Appellant.*

_____

                      JAY S. BERKE, William F. Clarke, Jr. (Skadden, Arps, Slate, Meagher & Flom LLP), New York, NY, *for Respondent-Appellant.*

                      ROBERT D. ARENSTEIN (Law Office of Robert D. Arenstein), New York, NY; Allan D. Mantel, Alison L. Epilone (Stein Riso Mantel, LLP), *for Petitioner-Appellee.*

Appeal from a judgment of the United States District Court for the Eastern District of New York (Mauskopf, *J.*, Pollak, *M.J.*).

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

On June 23, 2009, Petitioner-Appellee Massimo Poliero filed a petition under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 22,670, 1343 U.N.T.S. 89, *reprinted at* 51 Fed. Reg. 10,494 (Mar. 26, 1986), and the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601-11611, in the United States District Court for the Eastern District of New York alleging that his wife, Respondent-Appellant Barbara Centenaro, had wrongfully retained the couple's children in New York in violation of the Hague Convention and ICARA and seeking the return of the children to Italy. On September 11, 2009, the district court (Mauskopf, *J.*) adopted the recommendation of the magistrate judge (Pollak, *M.J.*) to grant the petition, and entered judgment in Petitioner's favor. Respondent-Appellant appeals. We assume the parties' familiarity with the remaining facts, procedural history, and issues presented for review.

"[I]n order to prevail on a claim under the Hague Convention, a petitioner must establish by a preponderance of the evidence that (1) the child was habitually resident in one State and then removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the place of habitual residence; and (3) the petitioner was exercising custody rights at the time of the removal or retention." *Villegas Duran v. Arribada Beaumont*, 534 F.3d 142, 147 (2d Cir. 2008); *see also Gitter v. Gitter*, 396 F.3d 124, 130-31 (2d Cir. 2005). Respondent does not challenge the district court's conclusion that Petitioner satisfied prongs

(2) and (3), and thus the question in this case is where the children were "habitually resident" prior to Respondent's decision to retain them in the United States in July 2009.

A child's "habitual residence" for purposes of the Hague Convention is a "legal precept that we review *de novo*." *Gitter*, 396 F.3d at 133 n.8. We review a district court's factual findings supporting its conclusion as to the child's habitual residence for clear error. *See id.* at 133, 135. We may affirm on any basis supported by the record, including grounds not relied on by the district court. *See, e.g.*, *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 405 (2d Cir. 2006).

We set forth the applicable test for determining a child's habitual residence in *Gitter*. First, we inquire "into the shared intent of those entitled to fix the child's residence (usually the parents) at the latest time that their intent was shared." *Gitter*, 396 F.3d at 134. This question can in turn be broken down into two components: whether the parents formed a shared, "settled intention" to "abandon" the child's previous habitual residence, *id.* at 132, and whether the parents "have mutually intended that the child acquire a new habitual residence" in a new location, *id.* at 133; *see also Barzilay v. Barzilay*, No. 09-2358, 2010 WL 1253732, at *5 (8th Cir. Apr. 2, 2010) ("The settled purpose of a family's move to a new country is a central element of the habitual residence inquiry. This settled purpose need not be to stay in a new location forever, but the family must have a sufficient degree of continuity to be properly described as settled." (internal quotation marks and citation omitted)).

Generally, once we determine the shared intentions of the parents, we conclude that "the child's habitual residence, in fact, accords with that parental intent." *Gitter*, 396 F.3d at 133. However, the second step of our inquiry requires us to determine whether, "notwithstanding the intent of those entitled to fix the child's habitual residence, the evidence points unequivocally to the

3

conclusion that the child has become acclimatized to his new surroundings and that his habitual residence has consequently shifted." *Id.* This is a difficult test to satisfy, and a child's habitual residence will only be found to have "shifted" due to acclimatization, *id.* at 133, if "the child's relative attachments to the [two possible habitual residences] have changed to the point where requiring return to the original forum would now be tantamount to taking the child out of the family and social environment in which its life has developed," *id.* at 134 (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1081 (9th Cir. 2001)) (internal quotation marks omitted); *see also id.* ("[T]he child's acclimatization to the location abroad will be so complete" in these cases that "serious harm to the child can be expected to result from compelling his return to the family's intended residence.").

We conclude that the facts found by the district court proved by a preponderance of the evidence that the habitual residence of the children in this case was Italy. Therefore, the district court's conclusion that Respondent wrongfully retained the children in the United States was correct. First, the district court made factual findings that sufficiently demonstrate that the parties at no time formed a shared "settled intention to abandon" Italy as the children's habitual residence. *Gitter*, 396 F.3d at 132. So far as the record discloses, the parties did not attempt to sell their family home in Vincenza, Italy. The parties maintained their personal belongings and furniture in Italy. The parties leased their two apartments in New York for dates timed to coincide with the school year of the children. For at least the first year of their stay in the United States, the parties also rented their furniture rather than purchase it. Additionally, the parties maintained continuous connections with Italy, even though they did not live there the majority of the year, as the family returned to Italy each year for several weeks at Christmas, as well as for the entire summer of 2008. Finally, the facts found by the district court indicate that the parties did not have a shared intent to remain in the

4

United States past the end of the school year in 2009. Petitioner purchased airline tickets for the entire family to return from New York to Venice on July 1, 2009. The parties appear to have agreed in early spring 2009 to enroll the children in schools in Italy for the 2009-2010 school year. Respondent indicated in a March 29, 2009 email to an employee in the family's apartment building that the family intended to leave their apartment in Queens on July 1, 2009. We find no clear error in any of these factual findings, and conclude that they more than adequately demonstrate that, despite deciding to come to the United States for a relatively lengthy period of time, the parties' last shared intent was not to abandon the children's habitual residence in Italy. *Cf. Feder v. Evans-Feder*, 63 F.3d 217, 219, 224-25 (3d Cir. 1995) (concluding that Australia was child's habitual residence in a situation in which, among other things, the parents put their house in United States on the market and sold various personal items in preparation for moving to Australia, purchased home in Australia, pursued employment in Australia, and arranged for child's long-term schooling in Australia); *see also Maxwell v. Maxwell*, 588 F.3d 245, 253 (4th Cir. 2009) (parent did not intend to abandon United States as habitual residence when she left possessions behind after moving to new location, purchased round trip air tickets, manifested an intent to return her child to American school, and maintained local financial accounts, health insurance, and lease and insurance on car in the United States).

Second, the district court did not err in concluding that the children had not acquired a new habitual residence in the United States by acclimatizing to the country, notwithstanding their parents' evident intent to remain residents of Italy. The district court concluded that the children, though they had adjusted well to living in New York and expressed some preference for remaining in the United States, had maintained significant connections with Italy throughout their stay in the United States,

5

returning to Italy for lengthy periods of time at vacations and remaining in contact with friends and relatives there. Given these factual findings, drawn largely from the district court's interviews with the two older children and which Respondent does not challenge as clearly erroneous, we conclude that the district court's further finding that the children's acclimatization to the United States was not "so complete that serious harm to the child[ren] c[ould] be expected to result from compelling [their] return" to Italy, *Gitter*, 396 F.3d at 134, is likewise not clearly erroneous.

Finally, Respondent contends that the district court abused its discretion in precluding the introduction of evidence relating to Petitioner's alleged physical abuse of Respondent. We review a district court's evidentiary rulings for abuse of discretion, *see Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 148 (2d Cir. 2001), and we "will not reverse unless the district court's decision was 'manifestly erroneous.'" *United States v. Yousef*, 327 F.3d 56, 156 (2d Cir. 2003) (quoting *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 87-88 (2d Cir. 1999)). We see no abuse of discretion in the district court's decision to preclude the questioning of Petitioner with regard to alleged physical abuse. First, the district court did hear Petitioner admit that he had in the past hit his wife, and thus any evidence that would have been elicited by further questioning would most likely have been merely cumulative. Second, whether or not Petitioner had engaged in domestic violence was not directly relevant to the question the district court had before it: the habitual residence of the parties' children. Finally, Respondent suffered no prejudice from the district court's ruling; she argued to the district court that the evidence of domestic violence was relevant to the question of why the family chose to leave Italy for New York in 2007, but Respondent was not precluded from seeking to demonstrate using other evidence that the purpose of the family's decision was to repair the couple's troubled marriage.

6

We have considered Respondent's remaining arguments and conclude that they are without merit.  For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk