**In re the Application of Pablo E. Vasquez CARVAJAL, Petitioner,**

v.

**Diana Gonzalez CHAVARRIA, Respondent.**

**Case No. 3:13CV1779 (AWT).**

United States District Court, D. Connecticut.

Dec. 10, 2013.

Mark A. Shiffrin, Woodbridge, CT, for Petitioner.

Giustino Capodilupo, The Law Office of Giustino Capodilupo, LLC, Ridgefield, CT, for Respondent.

### MEMORANDUM OF DECISION

ALVIN W. THOMPSON, District Judge.

The petitioner, Pablo E. Vasquez Carvajal, ("Vasquez") brings this action against the respondent, Diana Gonzalez Chavarria, ("Gonzalez") under the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11, seeking, *inter alia*, the return to Costa Rica of their seven-year-old son, L.V. The United States is a contracting state to the Hague Convention, and Congress has implemented its provisions through the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.* For the reasons set forth below, the court is ordering that L.V. be returned to Costa Rica, where determinations as to custody can continue to be made by a Costa Rican court under the laws of Costa Rica.

On December 9, 2013, the court held a consolidated hearing on the petitioner's motion for a preliminary injunction and trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2), at the request of the petitioner and with the agreement of the respondent. Respondent Gonzalez does not contest the court's determination that petitioner Vasquez has established the elements of a prima facie cause of action for return. Rather, Gonzalez contends that this court is not bound to order the return of L.V. to Costa Rica because Gonzalez has established (i) that Vasquez consented to the removal of L.V. to the United States, and (ii) there is a grave risk that L.V.'s return to Costa Rica would expose the child to physical or psychological harm or would otherwise place L.V. in an intolerable situation.

Based on the submissions of the parties and the testimony at trial, the court concludes that the petitioner has established the elements of a cause of action for return of L.V. to Costa Rica pursuant to the Hague Convention.

■ Article 4 of the Hague Convention provides that it "shall cease to apply when the child attains the age of 16 years." Hague Convention, Art. 4. It is undisputed that L.V. is currently seven years-old. "[I]n order to prevail on a claim under the Hague Convention, a petitioner must establish by a preponderance of the evidence that (1) the child was habitually resident in one State and then removed or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the place of habitual residence; and (3) the petitioner was exercising custody rights at the time of the removal or retention." *Duran v. Beaumont,* 534 F.3d 142, 147 (2d Cir.2008) (internal citations omitted), *abrogated* on *other grounds* by *Abbott v. Abbott,* 560

U.S. 1, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010).

Here it is undisputed that Vasquez and Gonzalez were living together prior to the birth of L.V. in 2006, and continued to live together with L.V. until September 2010. In September 2010, Gonzalez left their home, and Vasquez and L.V. continued to reside together. Then in February 2011, L.V. went to live with Gonzalez. On November 29, 2011, the Family Court of the Second Judicial Circuit of San José issued a judgment ("Family Court Judgment") based on an agreement between Gonzalez and Vasquez. The judgment set forth, *inter alia,* the times during which L.V. would stay with his father. It is undisputed that at all times before Gonzalez brought L.V. to the United States on or about May 29, 2013, L.V. resided in Costa Rica. Thus, the petitioner established that the child was habitually resident in Costa Rica and then removed to the United States.

■ With respect to the requirement that Vasquez establish that the removal of L.V. was in breach of his custody rights under the law of the place of habitual residence, the court notes that the Family Court Judgment does not use the term "custody" with respect to the period of time L.V. is to spend with Gonzalez versus Vasquez. It merely states which periods of time L.V. is to spend with each parent. The court notes that the Request for International Return issued by the Patronato Nacional de la Infancia does refer to "the mother who exercises custody, child rearing and education." Pet. Memo. of Law, Ex. D. However, the court concludes that L.V. was wrongfully removed in breach of Vasquez's custody rights under the laws of Costa Rica because, as held by the United States Supreme Court in *Abbott v. Abbott,* 560 U.S. 1, 10, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010), Vasquez's *"ne exeat* right is a

right of custody under the [Hague] Convention." The court has received a statement from the Central Authority of the Republic of Costa Rica that "[a]ccording to Costa Rican law both parents must give consent for children to leave the country." Ct. Ex. 2, Costa Rican Central Authority ("Letter of Advice from the Central Authority"). Vasquez testified that he did not give any such consent, and the court credits his testimony.

Finally, both Vasquez and Gonzalez testified that Vasquez consistently spent time with L.V. during the periods he was authorized to do so under the Family Court Judgment up to the time when L.V. was removed to the United States by Gonzalez. Thus, Vasquez has established he was exercising custody rights at the time L.V. was removed to the United States.

■ Gonzalez asserts two defenses. First, Gonzalez contends that Vasquez had consented to the removal of L.V. to the United States. *See* Hague Convention, Art. 13(a). Gonzalez has the burden of establishing this defense by preponderance of the evidence. She has failed to do so.

Gonzalez relies on a Minores Exit Permit (*see* Resp't's Ex. 8) (the "Exit Permit") and a conversation she had Vasquez in February 2013. The Exit Permit was obtained in June 2007 and lists both parents as companions of the minor. It was modified on July 14, 2010, to reflect that L.V. may travel with "either of his parents Diana Gonzales Chavarria ... Pablo Esteban Vasquez Carvajal...." Resp't Ex. 8. However, the Exit Permit was obtained and modified at times when Vasquez and Gonzalez were living together. They did not separate until September 2010. The court finds significant the fact that the Family Court Judgment makes no reference to the possibility of Gonzalez and/or L.V. relocating outside of Costa Rica. For this reason, the court credits Vasquez's testimony that

by applying for this Exit Permit and agreeing to the modification, he was not consenting to Gonzalez's removal of L.V. from his habitual residence in Costa Rica. In addition, the Letter of Advice from the Central Authority makes it clear that the issuance of the Exit Permit is separate and apart from consent by a parent to removal of his or her child from Costa Rica:

> While it is true that in this case a permit for the child to leave the country with both parents is on file with the Department of Immigration and Alien Status, this does not authorize the mother to bring the child to reside in the United States or any other country WITHOUT THE CONSENT OF MR. VASQUEZ.

Ct. Ex. 2. As to the February 2013 conversation, the court credits Vasquez's testimony to the effect that when Gonzalez broached the idea of relocating L.V. to the United States, Vasquez said "no" and did not elaborate because they were in the presence of others and he did not want to have an argument. Even Gonzalez testified that Vasquez did not consent, but rather that Vasquez said he would think about it.

■ Gonzalez also contends that, as contemplated by Article 13(b) of the Hague Convention, this court is not bound to order the return of L.V. to Costa Rica because "there is a grave risk that his ... return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, Art. 13(b). Gonzalez has the burden of establishing this defense by clear and convincing evidence. *See* 42 U.S.C. § 11603(e)(2)(A). She has failed to do so. At most her testimony has created an issue as to whether living conditions in the United States might be better.

As to physical or psychological harm, Gonzalez offered evidence as to incidents

between Vasquez and herself or Gonzalez's boyfriend, all of which predate the Family Court Judgment. This court finds that the Family Court Judgment is the best evidence as to whether there was any risk to L.V. as a result of his being in Costa Rica and spending time with his father. The only condition set forth in the Family Court Judgment that would be arguably relevant here is the condition that Vasquez "manage the relevant appointments with the Wem Institute or the Instituto Enfoque a la Familia, in order to control his character...." Pet. Memo. of Law, Ex. B. However, no claim as to conduct by Vasquez relates to his conduct vis-à-vis L.V.

As to a grave risk that L.V. would otherwise be placed in an intolerable situation, Gonzalez testified that L.V. is doing better in school in the United States and has better access to medical care. The testimony was disputed by Vasquez, who testified as to L.V.'s schooling in Costa Rica, the availability of medical care, and the fact that he took L.V. for dental appointments in Costa Rica. Gonzalez also testified that she can earn more here than she can earn in Costa Rica. Even if the court were to credit Gonzalez's testimony (and the court finds Vasquez's testimony more persuasive), her testimony in substance was to the effect that there is a higher standard of living in the United States than in Costa Rica; even if she is correct, that fact would not support a conclusion that L.V. would be placed in an intolerable situation.

Based on the foregoing, the court concludes that petitioner Vasquez has established by a preponderance of the evidence that he has satisfied the requirements under 42 U.S.C. § 11603(e)(1)(A) for obtaining an order for return, and respondent Gonzalez has failed to establish any defense under the Hague Convention. Accordingly, final judgment should enter in favor of petitioner Vasquez, providing that the minor child L.V. shall be returned to Costa Rica, where determinations as to custody can continue to be made by a Costa Rican court under the laws of Costa Rica. The court is giving the parties an opportunity today to reach an agreement as to the logistics of returning L.V. to Costa Rica, after which the court will issue an order implementing this decision.

It is so ordered.